IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOON YOUNG CHUL KIM, KEE JUNE KIM, MARC JAEHYUNG CHO, MICHELLE MINJUNG KO, and CRISTIAN DJURICKOVIC, | ) ) ) ) ) | |
| Plaintiffs, | ) | Case No. 14-cv-05014 |
| v. | ) ) | District Judge Hon. Elaine E. Bucklo |
| CAPITAL DENTAL TECHNOLOGY LABORATORY, INC. d/b/a LSK 121 and LUKE S. KAHNG, | ) ) ) ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants, CAPITAL DENTAL TECHNOLOGY LABORATORY, INC. ("LSK121") and LUKE S. KAHNG ("Kahng"), by and through their undersigned attorneys, hereby submit their Memorandum of Law in Support of their Motion for Partial Summary Judgment.

**I. INTRODUCTION**

On July 1, 2014, Plaintiff Joon Young Chul Kim ("Young Chul Kim") filed a complaint against Defendants. (ECF Doc. 1.) On October 10, 2014, the complaint was amended to include Kee June Kim ("June Kim") as a plaintiff. (ECF Doc. 16.) Between October 10, 2014 and June 11, 2015, Plaintiffs June Kim, Marc Jaehyung Cho ("Cho"), Michelle Minjung Ko ("Ko"), and Cristian Djurickovic ("Djurickovic") filed their Consent to Become Party Plaintiffs. (ECF Docs. 16, 37-1)

Plaintiffs' claims arise under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL"). Plaintiffs allege that Defendants failed to pay them overtime wages as required under federal and state law. There are numerous issues within Plaintiffs'

complaint in which there are no genuine issue of material fact. Predominantly, some of the Plaintiffs are exempt from overtime pay, some of Plaintiffs' claims are barred by the statute of limitations, and, for those nonexempt employees, Plaintiffs' claims are limited under the FWW half-time multiplier calculation to compute any alleged unpaid overtime wages. All of these fundamental misunderstanding of the law by Plaintiffs have resulted in an inordinate amount of time to adjudicate this matter and caused Plaintiffs to erroneously seek damages by which they are not allowed to claim. As such, Defendants should be granted summary judgment as a matter of law on the issues set forth below.

## II.  STATEMENT OF FACTS

**A.     Plaintiff Young Chul Kim**

Plaintiff Young Chul Kim was employed by LSK121 as a Shade Tab Supervisor and Ceramist from April 3, 2012 until April 17, 2014. *See* Stmt. at ¶¶1-2. His salary started at $1,600 every two weeks ($41,600 per year), then increased to $1,648 every two weeks ($42,848 per year) on June 16, 2013 and then to $1,686.47 every two weeks ($43,848 per year) on February 9, 2014. *See* Stmt. at ¶3. His work hours were not set by LSK121 and he never complained to anyone at LSK121 that he was not making overtime nor tried to negotiate more pay. *See* Stmt. at ¶¶4-5.

**B.     Plaintiff Marc Jaehyung Cho**

Plaintiff Cho was employed by Defendants as a Wax-Metal Technician from on or about August 6, 2007 until May 8, 2015. *See* Stmt. at ¶¶6-7. Cho filed his written consent to opt-in as a plaintiff on June 11, 2015. *See* Stmt. at ¶8. As of June 11, 2012[1], Cho's salary started at $1,615.38 every two weeks ($42,000 per year). *See* Stmt. at ¶9. On June 2, 2013 he received a

---

[1] This is Cho's earliest relevant and operative work date for purposes of the IMWL's 3 year statute of limitations.

raise to $1,663.86 every two weeks ($43, 260 per year) and another raise on November 17, 2013 to $1,730.76 every two weeks ($45,000 per year). *Id*. On February 2014, he received yet another raise to $1,923.08 every two weeks ($50,000 per year). *Id*.

### C. Plaintiff Michelle Minjung Ko

Plaintiff Ko was employed at LSK121 as a Ceramist from on or about February 3, 2014 until September 26, 2014. *See* Stmt. at ¶¶10-11. Ko's salary started at $1,846.16 every two weeks ($48,000 per year), then increased to $1,923.08 every two weeks ($50,000 per year) on March 1, 2014, and then to $2,000 every two weeks ($52,000 per year) on June 7, 2014. *See* Stmt. at ¶12.

### D. Plaintiff June Kim

Plaintiff June Kim was employed by LSK121 as a Wax-Metal Department Supervisor from on or about July 7, 2003 until January 31, 2014. *See* Stmt. at ¶¶13-14. June Kim filed his notice of consent to become party plaintiff on October 10, 2014. *See* Stmt. at ¶20. June Kim's salary started at $1,153.85 every two weeks ($60,000 per year), then increased to $2,400 every two weeks ($62,400 per year) on April 7, 2013. *See* Stmt. at ¶15.

June Kim's Job Description for his position of Wax-Metal Department Supervisor stated, "This job has supervisory responsibilities over four to five or more Wax and Metal fabrication workers." *See* Stmt. at ¶16. To supplement understanding of June Kim's job duties, Plaintiff Cho and Eun Jung Bae provided Defendants with signed statements about their daily observations of June Kim's role. *See* Stmt. at ¶17. These statements support that, "June Kim… worked… in a supervisory capacity," and that "his duties included surveying the work received from dentists and then distributing it each day to five technicians." *Id*.

In addition, June Kim's job duties involved supervision of Plaintiff Cho, Eun Jung Bae, Tae Hyun Hwang, Audry Eunhee Kim, and Seok Keun Kwak. On at least 44 occasions, June

3

Kim had the authority and did, in fact, approve Vacation/Personal Leave Requests from 2009 to 2014 of his five subordinate employees. *See* Stmt. at ¶18. June Kim, also, participated in conducting performance reviews of three subordinate employees, Plaintiff Cho, Eun Jung Bae and Audry Eunhee Kim. *See* Stmt. at ¶19.

### E.     Plaintiff Djurickovic

Plaintiff Djurickovic was employed by Defendants as a CAD/CAM, Composite Manager, from on or about January 3, 2012 until September 20, 2013. *See* Stmt. at ¶¶21-22. Djurickovic filed his written consent to opt-in as a plaintiff on June 11, 2015. *See* Stmt. at ¶23. As of June 11, 2012[2], Djurickovic's salary started at $1,730.76 every two weeks ($45,000 per year), then increased to $2,038.46 every two weeks ($53,000 per year) on January 19, 2013. *See* Stmt. at ¶24.

Djurickovic was the most senior employee performing computer-aided design ("CAD") work at LSK121 and was responsible for the work product that came out of LSK121's CAD department. *See* Stmt. at ¶25-26. During his employment at LSK121, Djurickovic worked with three other subordinate employees. Djurickovic was tasked with correcting their mistakes, answering their questions and giving them advice on how to perform their work. *See* Stmt. at ¶27. In addition, Djurickovic trained his three subordinate employees on their job duties. *See* Stmt. at ¶28. After his employment at LSK121 ended, applied to the position of Lab Manager at EON Clinics, where he identified his role at LSK121 as a CAD/CAM, Composite Manager. *See* Stmt. at ¶21, 29.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

---

[2] This is Djurickovic's earliest relevant and operative work date for purposes of the FLSA/IMWL's 3 year statute of limitations.

4

to any material fact." Fed. R. Civ. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322-323 (1986). While all of the evidence is viewed in the light most favorable to the nonmovant, a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on its pleadings. Hemsworth II v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007). "A 'metaphysical doubt as to the material facts' is not enough to create a genuine issue of fact for trial; the evidence must allow for a reasonable trier of fact to find for the non-movant." Wilke v. Salamone, 404 F. Supp.2d 1040, 1046 (N.D. Ill. 2005).

### IV. ARGUMENTS

**A.      Some of Plaintiffs' Claims are Barred by the Three Year Statute of Limitations.**

Under the FLSA, a plaintiff must file a lawsuit within two years of the date of the alleged wage violation, and three years if the employer's violation was willful. 29 U.S.C. § 255(a). Under the IMWL, a plaintiff may seek unpaid overtime for up to three years. 820 ILCS 105/12. As there is no law or precedent abrogating the statute of limitations contained in 29 U.S.C § 255(a), the **maximum timeframe** for recovery of FLSA and IMWL violations is three years.

Further, in collective action lawsuits, the rules for the statute of limitations period differ. The FLSA provides that "no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). As such, the statute is clear that a suit is not "'commenced' for statute of limitation purposes until consent is filed." Babych v. Psychiatric Sols., Inc., No. 09 C 8000, 2011 WL 5507374, at *9 (N.D. Ill. Nov. 9, 2011) (holding that plaintiff's action was commenced on the date she filed her notice of consent). Written consents do not relate back to the filing of the original complaint. *Id.*

Here, some of Plaintiffs' overtime claims are barred under the three year statute of limitations.[3] Plaintiff June Kim filed his notice of consent on October 10, 2014. *See* Stmt. at ¶ 20. Consequently, any claimed damages prior to October 10, 2011 are barred under the three year statute of limitations. Cho and Djurickovic filed their notices of consent on June 11, 2015. *See* Stmt. at ¶¶8, 23. Any claims for damages prior to June 11, 2012 by these Plaintiffs are barred. Despite clarity in the law, June Kim, Cho and Djurickovic seek overtime damages beyond the three year statute of limitations.

Therefore, as there is no genuine dispute of material fact as to when Plaintiffs June Kim, Cho and Djurickovic filed their notices of consent, Defendants should be entitled to judgment as a matter of law as to all claims asserted by these Plaintiffs that go beyond three years from the date that they filed their notices of consent to become party plaintiff.

**B.    The Half-Time Multiplier Applies to Compute Damages.**

Courts take two different approaches when calculating unpaid overtime wages. Plaintiffs wrongly rely on the first approach, the "one-and-one half time multiplier," in which misclassified employees are awarded one-and-a-half times their hourly pay for all overtime hours worked. 29 U.S.C. §207(a)(1). In the second approach (which should apply in this case), the "half time multiplier" or "fluctuating workweek ("FWW") method," misclassified employees are solely awarded an additional half-time their regular rate of pay for all overtime worked. <u>Mitchell v. Abercrombie & Fitch, Co.</u>, 428 F.Supp.2d 725, 733 (S.D. Ohio 2006). Courts use this approach when the employer and the employee have agreed that the employee's salary is intended to be a fixed amount to work fluctuating hours. <u>Black v. SettlePou, P.C.</u>, 732 F.3d 492, 498 (5th Cir. 2013).

---

[3] Defendants do not concede liability or that the FLSA's two year statute of limitations applies to this case.

In determining whether the FWW method is appropriate, both the parties' initial understanding of the employment arrangement, as well as the parties' conduct during the period of employment, must be taken into account to determine whether they agreed. SettlePou, P.C. 732 F.3d at 499. The plaintiff has the burden to prove that a nonfluctuating workweek method should be applied. Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir. 2001).

Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665 (7th Cir. 2010) is particularly instructive and binding for this issue. In Urnikis-Negro, the court found it was appropriate to turn to the FWW method to calculate the plaintiff's overtime premiums. The employee-plaintiff and employer-defendant did not discuss the number of hours she would be expected to work at the time of her hire. Id. at 667-68. Although the court credited plaintiff's testimony that she expected to work a forty-hour week, it found that she also understood that her salary was to cover whatever time she was called upon to work in a given week. Id. Her job with the employer was task-oriented, and her hours were likely to fluctuate with the volume of the employer's business. Id. The facts from Urnikis-Negro are analogous to the facts in this case.

Here, although the five Plaintiffs vary in position and salary, a common thread throughout their employment at LSK121 is that they agreed to a fixed salary in exchange for working fluctuating hours in any given workweek. Each of the Plaintiffs agreed to receive a fixed salary regardless of the number of hours worked, as follows:

- Young Chul Kim's salary started at $1,600 every two weeks ($41,600 per year), then increased to $1,648 every two weeks ($42,848 per year) on June 16, 2013 and then to $1,686.47 every two weeks ($43,848 per year) on February 9, 2014. See Stmt. at ¶3.

- Cho's salary started at $1,615.38 every two weeks ($42,000 per year), then increased to $1,663.86 every two weeks ($43,260 per year) on June 2, 2013, then to $1,730.76 every two weeks ($45,000 per year) on November 17, 2013 and finally to $1,923.08 every two weeks ($50,000 per year on February 9, 2014. See Stmt. at ¶9.

- Ko's salary started at $1,846.16 every two weeks ($48,000 per year), then increased to $1,923.08 every two weeks ($50,000 per year) on March 1, 2014, and then to $2,000 every two weeks ($52,000 per year) on June 7, 2014. *See* Stmt. at ¶12.

- June Kim's salary started at $1,153.85 every two weeks ($60,000 per year), then increased to $2,400 every two weeks ($62,400 per year) on April 7, 2013. *See* Stmt. at ¶15.

- Djurickovic's salary started at $1,730.76 every two weeks ($45,000 per year), then increased to $2,038.46 every two weeks ($53,000 per year) on January 19, 2013. *See* Stmt. at ¶24.

There is no dispute that the Plaintiffs received the salaries noted above as evidence by their paystub records. In nearly every paystub, Plaintiffs were paid the same fixed salary for each workweek. The salary was intended to cover all hours worked. Regardless of what the Plaintiff may claim, all of the Plaintiffs understood that their salary was fixed and intended to cover all hours worked. These facts, taken with the absence of any of the Plaintiffs notifying Defendants that they thought they were entitled to more than a fixed amount, confirm that the FWW method should apply. *See, e.g.,* Stmt. at ¶5.

Therefore, as there is no dispute that Plaintiffs were paid a fixed salary regardless of the number hours they worked and that their salaries were intended to cover all hours worked, Defendants are entitled to summary judgment that the proper methodology to calculate unpaid overtime hours is the FWW half-time multiplier set forth in Urnikis-Negro.[4]

**C.     June Kim Falls Within the Executive Exemption.**

The FLSA requires covered employers to pay nonexempt employees at least the statutory minimum wage for all hours worked and overtime pay for hours worked over 40 in a workweek. U.S.C. § 206(a)(1), 207(a)(1). There are several exemptions to these provisions of the FLSA.

---

[4] By requesting summary judgment on this issue, Defendants do no concede that some of the Plaintiffs are exempt employees, as explained below.

Pursuant to 29 U.S.C. § 213(a)(1) of the FLSA, employees who work "in a bona fide executive, administrative, or professional capacity" are exempt from receiving overtime wages.

June Kim falls within this "executive exemption" and is not entitled to FLSA overtime pay. The Department of Labor's ("DOL") regulations interpret this defense and contain a short test that defines the phrase "employee employed in a bona fide executive capacity." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1266 (11th Cir. 2008). To establish an employee is a bona fide executive, an employer must show: (1) the employee is "compensated on a salary basis at a rate of not less than $455 per week" (or $23,600 per year); (2) the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." Id. June Kim meets all four of these criteria.

First, as of October 10, 2011[5] June Kim was compensated on a salary basis of $60,000 per year. See Stmt. at ¶15. June Kim then received a raise on April 7, 2013 to $62,400 per year. Id. Both salaries far exceed the requisite amount of at least $23,600 per year. The overtime provisions were not created to provide highly compensated employees in white collar jobs with additional compensation.

Second, June Kim's primary duty as "Wax – Metal Department Supervisor" was to supervise this department of LSK121. Two employee witnesses of LSK121 signed a statement affirming that Kee June Kim's "duties included surveying the work received from dentists and

---

[5] This is Kee June Kim's earliest relevant and operative work date for purposes of the IMWL's 3 year statute of limitations.

then distributing it each day to five technicians." *See* Stmt. at ¶17. These signed statements coincide with June Kim's job description which states, "This job has supervisory responsibilities over four to five or more Wax and Metal fabrication workers." *See* Stmt. at ¶16.

Third, in addition to the above support, Defendants' employees' personnel files show that June Kim customarily and regularly directed the work of two or more other employees and that he participated in administering annual performance reviews of his subordinate employees as well as approving or denying their vacation and other leave requests. *See* Stmt. at ¶18-19. He participated in the performance reviews of Plaintiff Cho and Eun Jung Bae. *See* Stmt. at ¶ 19. In addition, he approved vacation leave requests by Plaintiff Cho, Eun Jung Bae, Tae Hyun Hwang, Audry Eunhee Kim and Seok Keun Kwak. *See* Stmt. at ¶ 18.

Lastly, needless to say, Kee June Kim had an enormous amount of control and influence over the hiring, firing and promotions of his employees, as evidenced by approving their work activities. As the individual who monitored, distributed work and evaluated his subordinates, his recommendations to the status of their employment was given particular weight. The regulations do not specify that an executive exempt employee's recommendations must be binding upon the final decisionmaker. 29 C.F.R. §541.100. As such, as there is no dispute of material fact that June Kim satisfies all of the requisite criteria to fall within the executive exemption, Defendants are entitled to summary judgment on the issue of Plaintiff June Kim's exemption status.

**D.     Cristian Djurickovic Falls Within the Executive Exemption.**

Using this same analysis, the executive exemption also applies to Djurickovic who at all relevant times was employed as a CAD/CAM, Composite Manager. *See* Stmt. at ¶21. As of June 11, 2012[6], Djurickovic's salary was $45,000 per year. *See* Stmt. at ¶24. Djurickovic received a

---

[6] This is Djurickovic's earliest relevant and operative work date for purposes of the IMWL's 3 year statute of limitations.

10

raise on January 19, 2013 to $53,000 per year. *Id*. Both salaries surpass the minimum $23,600 per year.

Although Djurickovic attempted to underplay the actual significance of his position at LSK121, it is antithetical to the other facts on the record that show he is an exempt employee. For example, Djurickovic was the most senior employee performing computer-aided design ("CAD") work at LSK121 and he was responsible for the work product that came out of LSK121's CAD department. *See* Stmt. at ¶¶25-26. As such, he worked with three other subordinate employees and was tasked with correcting their mistakes, answering their questions and giving them advice on how to perform their work. *See* Stmt. at ¶27. This management and supervisory duty encompassed training his subordinates on the performance of their job duties. *See* Stmt. at ¶27. Given his managerial role, it goes without saying that Djurickovic held himself out to be a manager by stating on his employment application to EON Clinics that he was a CAD/CAM, Composite Manager at LSK 121. *See* Stmt. at ¶21, 29. Djurickovic thus obviously thought of himself as a managerial employee.

Therefore, as there is no dispute of material fact that Djurickovic satisfies all of the requisite criteria to fall within the executive exemption, Defendants are entitled to summary judgment on the issue of Plaintiff Djurickovic's exemption status.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully requests that their Motion for Partial Summary Judgment be granted and that summary judgment be entered in their favor as to: (i) any overtime claim that go beyond three years from the date of the filed opt-in notice; (ii) the application of the FWW half-time multiplier set forth in Urnikis-Negro; (iii) the exemption status June Kim as an exempt employee; and (iv) the exemption status Djurickovic as an exempt employee

DATED: July 17, 2017                    Respectfully submitted,

**CAPITAL DENTAL TECHNOLOGY LABORATORY, INC. and LUKE KAHNG**

By: /s/ Peter C. Kim

Peter C. Kim
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
(312) 781-6601
kimp@litchfieldcavo.com

**CERTIFICATE OF SERVICE**

I certify that on July 17, 2017, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Illinois by using the CM/ECF system, which will send a notice of electronic filing to the following attorneys of record:

Ryan J. Kim
Inseed Law, P.C.
2454 E. Dempster St., Suite 301
Des Plaines, Illinois 60016
ryan@inseedlaw.com

/s/ Peter C. Kim

Peter C. Kim
LITCHFIELD CAVO LLP
303 W. Madison Street, Suite 300
Chicago, Illinois 60606
(312) 781-6601
kimp@litchfieldcavo.com