IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Joon Young Chul Kim, et al., ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 14-cv-5014 |
| ) | |
| Capital Dental Technology ) | |
| Laboratory, Inc., d/b/a LSK ) | |
| 121, and Luke S. Kahng, ) | |
| ) | |
| Defendants. ) | |

## Memorandum Opinion and Order

Plaintiffs Joon Young Chul Kim ("Young Chul Kim") and Kee
June Kim ("June Kim"), along with three of their former
coworkers, sue their former employer Capital Dental Technology
Laboratory, Inc., d/b/a LSK 121 ("LSK 121") and former manager
Luke Kahng ("Kahng") for violations of the Fair Labor Standards
Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum
Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq*. Specifically, they
allege that defendants failed to provide overtime compensation
for hours worked in excess of forty hours in a workweek. Before
me is defendants' motion for partial summary judgment, which
seeks to limit certain plaintiffs' claims according to the FLSA
and the IMWL statutes of limitations; to resolve which overtime
compensation method applies to plaintiffs' claims; and to
resolve in their favor the claims asserted by two plaintiffs—

June Kim and Christian Djurickovic ("Djurickovic")—on the ground that these employees fall within the FLSA's executive employee exemption for overtime purposes. For the reasons that follow, I deny defendants' motion.

I.

The following facts are undisputed except where noted. Plaintiffs are five former employees of defendant LSK 121, a dental prosthetics laboratory owned and managed by defendant Kahng and located in Naperville, Illinois. At LSK 121, plaintiffs performed laboratory technician work in several different capacities and departments. Plaintiffs Young Chul Kim and Michelle Minjung Ko ("Ko") were ceramists. Plaintiffs June Kim and Marc Jaehyung Cho ("Cho") worked in the wax-metal department, and plaintiff Djurickovic performed computer-aided design ("CAD") work. Defendants assert, and plaintiffs' allegations likewise suggest, that all five former employees were paid a set salary every two weeks during the course of their employment.[1] Plaintiffs claim that they regularly worked more than forty hours in a workweek and that defendants failed

---

[1] As discussed below, this allegation is at odds with certain evidence in the record, including evidence of deductions applied to plaintiffs' paychecks. It also conflicts with evidence suggesting that plaintiff Cho might have been paid on an hourly basis for a period in 2014. Paystubs attached to plaintiffs' opposition brief indicate Cho's 2014 hourly rate, but this evidence alone does not definitively establish that he was paid on an hourly basis. *See* Pls.' Opp., Exh. E at 2-3.

to pay them overtime compensation for these additional hours worked.

Defendants contend that plaintiffs June Kim and Djurickovic were supervisors who fell within the FLSA's overtime exemption for executive employees. Defendants point to a job description that purports to identify June Kim's position as supervisory and exempt. June Kim Dep., Exh. 14. June Kim testified that he had never seen this document before his deposition. June Kim Dep. at 77-78. Defendants also cite signed statements from two employees, including plaintiff Cho, stating that June Kim supervised five technicians in the wax-metal department. Defs.' L.R. 56.1 Stmt., Exh. 7. Additionally, the record shows that June Kim participated in performance reviews of three wax-metal department employees in 2009 and 2010, and defendants assert that he signed vacation requests for employees in the wax-metal department. June Kim Dep. at 56-59, 62-68, Exhs. 5-13.

Plaintiff Djurickovic was the most senior employee in defendant LSK 121's CAD department when he worked there. Djurickovic Dep. at 50-51. In the CAD department, Djurickovic worked with three other employees, whom he trained, assisted, and corrected. *Id.* at 52-53, 57. After Djurickovic stopped working for LSK 121, he applied for a lab manager position with another company. *Id.* at 28-29; Defs.' L.R. 56.1 Stmt., Exh. 8. In his application, Djurickovic identified his position at LSK

3

121 as "CAD/CAM Composite Manager." Defs.' L.R. 56.1 Stmt., Exh. 8.

Plaintiff Young Chul Kim filed the original complaint on July 1, 2014. Plaintiffs amended their complaint on October 10, 2014, adding June Kim as a named plaintiff. Opt-in plaintiffs Cho, Ko, and Djurickovic filed their consent-to-join forms with the court on June 11, 2015. Defendants filed the present motion for partial summary judgment on July 17, 2017, seeking to narrow the issues in advance of trial.

## II.

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247 (1986). "The underlying substantive law governs whether a factual dispute is material," and a dispute is "genuine" for the purposes of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

The moving party bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the evidence that demonstrate an absence of a genuine dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

4

(1986). If "the moving party puts forth evidence showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll*, 698 F.3d at 564. Where material facts are disputed, courts must "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

In this case, defendants move for partial summary judgment on three distinct issues. First, they argue that they are entitled to summary judgment on plaintiffs Cho and Djurickovic's claims accrued before June 11, 2012, and plaintiff June Kim's claims accrued before October 10, 2011. In defendants' view, these claims are barred by the FLSA and the IMWL's three-year statutes of limitations. Second, defendants seek summary judgment as to the proper method for calculating any overtime damages. Defendants contend that, based on the compensation scheme they have employed, the fluctuating workweek method ("FWW") for calculating overtime should apply—permitting overtime to be paid at 50 percent of the employees' regular rate rather than 150 percent. Finally, defendants urge me to grant summary judgment in their favor on the claims of June Kim and Djurickovic on the basis that they are exempt employees not entitled to overtime pay under the FLSA.

## A. Statute of Limitations

The default limitations period for an unpaid overtime claim brought under the FLSA is two years[2] from the date that the cause of action accrued—i.e., from the date that the overtime payment became due. 29 U.S.C. § 255(a); *see Halferty v. Pulse Drug Co.,* 821 F.2d 261, 271 (5th Cir.), *modified on other grounds,* 826 F.2d 2 (5th Cir. 1987) (per curiam). For willful violations of the FLSA's overtime provisions, the limitations period extends to three years. 29 U.S.C. § 255(a). Generally, the limitations period stops running on a plaintiff's claims once he files his complaint or joins an existing lawsuit. 29 U.S.C. § 256(a); *see Robinson v. Doe*, 272 F.3d 921, 922 (7th Cir. 2001) ("The statute of limitations in a suit based on federal law...stops running when the complaint is filed."). In FLSA collective actions, potential opt-in plaintiffs do not become parties to a suit until they file written consent with the court. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citing 29 U.S.C. § 216(b)). The statute of limitations therefore continues to run on opt-in plaintiffs' claims until they give their consent to join the suit. 29 U.S.C. § 256(b); *Davis v. Vanguard Home Care, LLC*, No. 16-CV-7277, 2016 WL 7049069, at *2 (N.D. Ill. Dec. 5, 2016). Because the statute

---

[2] The standard limitations period for IMWL claims is three years. 820 ILCS § 105/12(a).

6

of limitations is an affirmative defense,[3] *Hodgson v. Humphries*, 454 F.2d 1279, 1284 (10th Cir. 1972); *Braddock v. Madison Cty.*, 34 F. Supp. 2d 1098, 1112 (S.D. Ind. 1998), it is defendants' burden to establish that plaintiffs' claims are barred as untimely.[4]

Defendants urge the application of the default rules and seek summary judgment on all claims that fall outside the three-year limitations period. Specifically, they assert that because plaintiff June Kim did not join the suit until October 10, 2014, any of his overtime claims that accrued before October 10, 2011 are time-barred. Likewise, defendants argue that plaintiffs Cho and Djurickovic, who both filed their consent forms on June 11, 2015, cannot seek overtime claims that accrued before June 11, 2012. Because the dates on which these plaintiffs joined the suit are undisputed, defendants have met their initial burden of demonstrating that June Kim's claims before October 10, 2011,

---

[3] I note that defendants have not amended their answers to include this affirmative defense as required by Fed. R. Civ. P. 8(c). LSK 121 Answer [ECF No. 13] at 15-16; Kahng Answer [ECF No. 14] at 16-17; *see Brown v. Presstime Graphics, Inc.,* No. 2:13-CV-425-WTL-DKL, 2016 WL 6067885, at *2 (S.D. Ind. Oct. 17, 2016). Because the parties have not briefed this issue, and because I deny defendants' motion for summary judgment for other reasons, I will not determine whether defendants have waived the statute of limitations defense at this time.

[4] This is not to say that defendants carry the burden as to willfulness. It is plaintiffs' burden to prove at trial that defendants' violations were willful in order to trigger the FLSA's three-year, rather than two-year, statute of limitations. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995).

and Cho and Djurickovic's claims before June 11, 2012, are presumptively time-barred.

The burden therefore shifts to plaintiffs to identify evidence to overcome this presumption. *Carroll*, 698 F.3d at 564. In this context, plaintiffs must identify evidence from which a reasonable jury could conclude that an exception to the default limitations period applies. *See Cortez v. Medina's Landscaping, Inc.*, No. 00-cv-6320, 2002 WL 31175471, *2 (N.D. Ill. Sept. 30, 2002). Plaintiffs contend that the statute of limitations must be tolled because defendants failed to post and keep posted required materials concerning employees' FLSA rights. According to federal regulations, employers with any employees covered by the FLSA must "post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4. Along with their response brief, plaintiffs submit declarations from all five employees stating that they never saw "any poster regarding minimum wage or overtime pay posted inside LSK's facility" during their employment there. *See, e.g.,* Ko Decl. ¶ 3; Djurickovic Decl. ¶ 3. Plaintiffs argue that because they never saw the required labor poster in defendants' facility, and because defendants have not otherwise demonstrated that plaintiffs had acquired general knowledge of their FLSA

8

rights, the limitations period must be tolled for the period during which they were unaware of their rights.

In support of this argument, plaintiffs rely on two cases—*Chavez v. Don Stoltzner Mason Contractor, Inc.*, No. 10 C 264, 2010 WL 1417029 (N.D. Ill. Apr. 5, 2010), and *Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014). In *Chavez*, a group of hourly construction workers brought FLSA claims for unpaid overtime against their former employer. 2010 WL 1417029, at *1. The defendants moved to dismiss on multiple grounds, including that the plaintiffs' claims were "barred or at least limited by the applicable statute of limitations." *Id.* at *2. Judge Aspen denied the motion because the plaintiffs had alleged that the defendants failed to post notice as required by 29 C.F.R. § 516.4. *Id.* at *5. Because the employer had not made a showing that the plaintiffs otherwise acquired general knowledge of their FLSA rights, Judge Aspen concluded that the defendants' effort to dismiss the plaintiffs' claims as untimely failed. *Id.*

In *Cruz*, the Fourth Circuit recognized a similar tolling exception to the FLSA's limitations period. The plaintiff in that case brought FLSA and other claims against her former employers five years after she left their employ. The district court dismissed the claims as time-barred. Reversing the dismissal, the Fourth Circuit held that the plaintiff's FLSA claims could be "timely if she received actual notice of her

9

rights within three years" of filing suit. *Id.* at 148. Noting that the FLSA "inflicts [no] statutory penalties for failure to comply with the notice requirements," the circuit court reasoned that "absent a tolling rule, employers would have no incentive to post notice since they could hide the fact of their violations from employees until any relevant claims expired." *Cruz*, 773 F.3d at 147. Because the factual record, which only included the complaint, did not indicate when the employee had actual knowledge of her FLSA rights, the court reversed and remanded.

Defendants LSK 121 and Kahng argue in their reply brief that plaintiffs' reliance on *Chavez* and *Cruz* is misplaced because these cases were decided on motions to dismiss and because plaintiffs here did not allege in their complaint that defendants failed to post the FLSA notice. Defendants' latter argument is not well-taken. It is well-established that "a complaint need not anticipate or overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.,* 782 F.3d 922, 928 (7th Cir. 2015). While the court in *Chavez* found the failure-to-post allegation useful to its analysis, it does not follow that, without such an allegation, a plaintiff cannot assert a tolling argument.

And while it is true that *Cruz* and *Chavez* were resolved at the pleadings stage, the analysis in both underscores that tolling may be appropriate when the facts reveal that a plaintiff was unaware of her rights for a period of time after her claim accrued. Accordingly, these cases support the argument that a genuine dispute over when plaintiffs became aware of their rights precludes summary judgment in defendants' favor on the ground that their claims were untimely.

*Cortez v. Medina's Landscaping, Inc.*, No. 00-cv-6320, 2002 WL 31175471 (N.D. Ill. Sept. 30, 2002), is also instructive. In *Cortez*, an opt-in plaintiff filed his consent to join the suit after the limitations period on his claims had expired. At summary judgment, the defendants established that the plaintiff's claims were presumptively time-barred, but the plaintiff responded that the statute of limitations tolled because the employer had failed to post the required FLSA notice. Judge Gottschall denied the defendants' motion for summary judgment and instead granted the plaintiff's cross-motion because the record demonstrated that the employer had not made the required posting and that the plaintiff did not acquire "general awareness of his rights under the FLSA" until the month before filing his consent to join the suit. 2002 WL 31175471, at *6.

As noted above, plaintiffs offer declarations from each individual plaintiff indicating that he or she never saw any labor posters in defendants' facility. *See, e.g.,* Ko Decl. ¶ 3; Djurickovic Decl. ¶ 3. In reply, defendants complain of plaintiffs' "self-serving declarations," but they provide no evidence that 29 C.F.R. § 516.4's notice-posting requirement was satisfied.[5] A reasonable jury could conclude from this evidence that the required labor posters were not properly displayed and that the tolling rule articulated in *Cortez*, *Cruz*, and *Chavez* applies.[6]

## B. Fluctuating Workweek

The FLSA and the IMWL require employers to compensate covered employees for any hours worked in excess of forty hours per workweek at an overtime rate not less than one and one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1); 820 ILCS § 105/4a(1); 29 C.F.R. § 778.107. When an employee is compensated on an hourly rate basis, calculating her overtime

---

[5] Defendants note that plaintiffs have not explained why they believe the statute of limitations should be tolled to October 13, 2013. Plaintiffs' unexplained inclusion of this date is certainly peculiar. However, plaintiffs are not seeking summary judgment on the tolling issue, so it is unnecessary to determine which date would be appropriate for tolling purposes before the applicability of tolling has even been conclusively determined. For present purposes, it is enough that a reasonable jury could find that tolling was appropriate.

[6] Because the IMWL contains a similar notice-posting requirement, and plaintiffs declare that they never saw "any poster regarding minimum wage or overtime pay posted inside LSK's facility," Djurickovic Decl. ¶ 3, I deny defendants' motion for summary judgment with respect to plaintiffs' IMWL claims also.

rate is often straightforward. If the employee usually earns $10 an hour, she makes $15 for each hour of overtime she works because these extra hours must be compensated at 150 percent of her regular rate of pay.

Overtime calculation becomes more complicated when considering other compensation schemes. Neither the FLSA nor the IMWL requires employers to compensate employees on an hourly rate basis. 29 C.F.R. § 778.109; *see* 56 ILAC § 210.430. If they so choose, employers may pay their workers on a piece-rate, salary, day-rate, commission, or other basis. *Id.* Under each of these compensation schemes, however, overtime premiums must still be paid based on an employees' regular rate of pay for an hour's work. 29 C.F.R. § 778.109. The regular rate—the "keystone" of the FLSA's overtime provisions—is calculated according to the requirements in 29 U.S.C. § 207(e). *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 673 (7th Cir. 2010). In most cases, employers must pay employees 150 percent of their regular rate of pay just as in the example above. But the FLSA and the IMWL do permit some alternative methods for calculating overtime under certain conditions. One such alternative is the fluctuating workweek ("FWW") method, which defendants insist is operative here.

The FWW method permits employers to pay half-time, rather than time-and-a-half, overtime to certain salaried employees

13

whose hours of work fluctuate from week to week. *See* 29 C.F.R. § 778.114(a); 56 ILAC § 210.430(f); *see also Condo v. Sysco Corp.*, 1 F.3d 599, 601–02 (7th Cir. 1993); *Heder v. City of Two Rivers*, 295 F.3d 777, 779–80 (7th Cir. 2002). The basic understanding for this alternative calculation is that the employee's salary is fixed and is meant to serve as straight-time pay for whatever hours he works in a given workweek. The employee's regular rate of pay fluctuates with the hours he works because it is determined by dividing the employee's fixed salary by the actual hours he works in a particular week. *See Urnikis-Negro*, 616 F.3d at 683. Because the employee's salary is intended to cover all straight-time pay, regardless of his actual hours worked, the employer need only pay the fifty percent premium for all hours worked over forty. 29 C.F.R. § 778.114(a); 56 ILAC § 210.430(f). Thus, if an employee earning $500 every week works fifty hours, his regular rate of pay is $10 an hour. Under the FWW method he would be paid a $5 overtime premium for each of the ten hours he worked over forty. His total compensation would be $550 for that hypothetical week.

It is not difficult to see how the FWW method often benefits employers. *See Urnikis-Negro*, 616 F.3d at 682-84. It makes sense then that employers are permitted to use the FWW method only in certain circumstances. For the FWW method to apply, the following conditions must be met:

14

(1) The employee's work hours must fluctuate from week to week;

(2) The employee must receive a fixed salary (excepting overtime premiums) that does not change according to hours worked;

(3) There must be a clear mutual understanding between the employee and employer that the employee's fixed salary represents all straight-time pay for all hours worked each workweek, "whatever their number, rather than for working 40 hours or some other fixed weekly work period"; and

(4) The employee's fixed salary must compensate him at no less than the minimum wage for all hours worked.

29 C.F.R. § 778.114; *see Urnikis-Negro*, 616 F.3d at 680-81 (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 580-81 (1942)); *Heder*, 295 F.3d at 779-80; *Gallardo v. Scott Byron & Co.,* No. 12-CV-7202, 2014 WL 126085, at *11 (N.D. Ill. Jan. 14, 2014); 56 ILAC § 210.430(f).

Defendants contend that, because plaintiffs were paid a regular salary every two weeks that generally did not fluctuate based on the hours they worked, defendants are entitled to summary judgment on the matter of the FWW method's application.[7] In support, defendants offer paystubs and deposition transcripts showing the frequency and method with which plaintiffs were paid. Plaintiffs counter that defendants have not established

---

[7] Defendants cite *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001) for the proposition that plaintiffs have the burden at trial of proving that the employer improperly applied the FWW method. Without deciding whether this out-of-circuit holding applies to this case, I note that this would not relieve defendants of their initial burden as the moving party to show that they are entitled to summary judgment on the application of the FWW method. *Celotex*, 477 U.S. at 323.

that plaintiffs' biweekly salaries were fixed because LSK 121 made deductions when plaintiffs worked fewer than forty hours. Additionally, plaintiffs dispute that there existed a clear mutual understanding that LSK 121 employees' biweekly salary would compensate them for all straight-time hours worked.

I agree that plaintiffs have raised a triable dispute as to how their overtime should be calculated. For the FWW method to apply, plaintiffs' salary must not be "diminished even if [their] number of hours falls below 40, nor [can plaintiffs be] expected to make [hours] up in the future." *Heder*, 295 F.3d at 779; *see also* 29 C.F.R. § 778.114(c) (instructing that the FWW method "may not be used unless...the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked."). Several of plaintiffs' paystubs show that they were docked pay for partial-day absences and for absences caused by the employer's lack of work. *See, e.g.,* Djurickovic Dep. at 76-77, 79, 87, Exh. 4 at LSK800, LSK809; Pls.' Opp., Exh. D at LSK111 [June Kim paystubs]. Other paystubs show deductions for eight or sixteen hours of pay labeled "No Pay," presumably for full-day absences. *See, e.g.,* Young Chul Kim Dep. Exh. 2 at LSK28; Ko Dep. Exh. 4 at LSK1458-59.[8]

---

[8] The only plaintiff whose paystubs do not contain salary deductions is Cho. As plaintiffs argue, however, defendants' own payroll records suggest that Cho may have been paid hourly for at least part of the period for which he claims he is owed overtime. *See* Pls.' Opp., Exh. E at 2-3. Whether there was a

Defendants make no effort at all to explain these deductions. Nor do they address the "bonuses" reflected in several plaintiffs' paychecks, and which at least one plaintiff explained was for work he performed on Saturdays. Young Chul Kim Dep. at 23-25. In view of this evidence, defendants cannot make the requisite summary judgment showing that plaintiffs were paid fixed salaries, regardless of the hours worked in a week, and that a reasonable jury could not find otherwise. *See Heder*, 295 F.3d at 779-80; 29 C.F.R. § 778.114(c).[9]

Moreover, the undisputed facts do not reveal a clear mutual understanding between the parties that plaintiffs' salary constituted their straight-time pay for any and all hours worked. *See Heder*, 295 F.3d at 779; 29 C.F.R. § 778.114(a). "Section 778.114 does not require that an employee understand the precise details of how his employer calculates his overtime pay under the FWW formula...but as the Seventh Circuit has

---

clear mutual understanding about the FWW method's application is also in dispute. Summary judgment regarding Cho's overtime calculation is therefore not appropriate.

[9] Defendants emphasize plaintiffs' allegation in the amended complaint that they were paid a "fixed amount per week regardless of the number of hours they worked in a day or...a workweek." Am. Compl. at ¶ 50. As discussed, much of the evidence suggests that this was not actually the case, and, because defendants refer to the complaint only in their reply brief, plaintiffs did not have an opportunity to explain the contradiction. Arguments not raised until a reply brief are waived. *See United States v. Turner,* 203 F.3d 1010, 1019 (7th Cir. 2000). Even if plaintiffs are held to their contradictory allegation, however, there are additional issues, including whether a clear mutual understanding existed, that preclude summary judgment.

explained, it does require 'a clear mutual understanding that the base salary rate constitutes straight time for any overtime worked.'" *Gallardo*, 2014 WL 126085, at *11 (quoting *Heder*, 295 F.3d at 780); *see also Urnikis-Negro,* 616 F.3d at 667.

Defendants argue that they "have provided ample summary judgment evidence to support that there was a clear mutual understanding," but the only evidence they offer is the employees' paystubs, which show the amount and frequency of payment, and short excerpts of the deposition transcripts introducing the paystubs. *See* L.R. 56.1 Stmt. ¶¶ 3, 9, 12, 15, 24. In essence, defendants attempt to demonstrate that there was a meeting of the minds by showing that most of the plaintiffs' paychecks were for the same amount. But, as plaintiffs have asserted, their compensation was not always fixed. Moreover, plaintiffs' deposition testimony suggests that plaintiffs' understanding of their compensation was less than clear. For example, plaintiff June Kim testified that he was always an hourly employee while working at LSK 121, and he cited his hourly rates as he remembered them. June Kim Dep. at 18-19. And yet in another part of his testimony, he agreed with the examiner that he was paid the same salary regardless of hours worked. *Id.* at 42, 46. Plaintiff Young Chul Kim testified that his position at LSK 121 was hourly, but also noted that he was not told how many hours to work. Young Chul Kim Dep. at 11, 36.

18

Plaintiff Cho recalled defendant Kahng describing Cho's position as salaried, but Cho explained that he was actually "paid by the hour." Cho Dep. at 12. Plaintiffs' clear confusion about how they were paid attenuates defendants' argument that a clear mutual understanding existed between the parties. *See Gallardo*, 2014 WL 126085, at *13 (finding that plaintiffs' deposition testimony about their understanding of their pay rate undermined the defendants' "argument that they clearly understood that their base salaries compensated them...for all hours worked," even though a human resources representative also averred that she explained the FWW method to the plaintiffs). Although an agreement can be inferred from the parties' conduct, *see Urnikis-Negro*, 616 F.3d at 681 n.8, paystubs alone will not establish the absence of a genuine dispute when there is testimony suggesting that no such agreement existed. *See Gallardo*, 2014 WL 126085, at *13.

Because genuine disputes of material fact remain with respect to the FWW method's application, summary judgment is not warranted.

## C. Executive Exemption

As detailed above, the FLSA requires employers to pay its employees overtime premiums for hours worked in excess of forty hours. There are, however, certain classes of workers who are exempted from the FLSA's coverage. *See* 29 U.S.C. §§ 207, 213.

19

Under section 213(a)(1), "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). For these executive, administrative, and professional exemptions to apply, the Department of Labor's regulations require that a potentially exempt employee be paid on a salary basis, that the employee's salary meets a certain threshold level, and that the employee performs certain enumerated job duties, which demonstrate that his or her position is of the character that the statute intended to exempt. *See* 29 C.F.R. §§ 541.100, 541.200, 541.300 (2004). It is the employer's burden to demonstrate that an employee is exempt. *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007) ("FLSA overtime exemptions are affirmative defenses on which the employer has the burden of proof..."). The FLSA overtime exemptions are "narrowly drawn" against employers and are limited to applications that are "plainly and unmistakably within their terms and spirit." *Id.* (omitting internal quotation marks and citations); *see also Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 692 (4th Cir. 2009); *Davis v. Mountaire Farms, Inc.,* 453 F.3d 554, 556 (3d Cir. 2006); *Webster v. Pub. Sch. Employees of Washington, Inc.*, 247 F.3d 910, 914 (9th Cir. 2001).

Defendants argue that plaintiffs June Kim and Djurickovic are overtime-exempt executive employees. Under 29 C.F.R. § 541.100(a) (2004),[10] a bona fide executive employee is an employee:

> (1) Compensated on a salary basis at a rate not less than $455 per week;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

To establish that an employee falls under the executive exemption, an employer must demonstrate that each of these four conditions is met. *Davis*, 453 F.3d at 557; *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 678 (11th Cir. 2009); *Hundt v. DirectSat USA, LLC*, 294 F.R.D. 101, 110 (N.D. Ill. 2013). Determining the applicability of overtime exemptions requires courts to conduct a fact-intensive, individualized inquiry of an employee's job duties and responsibilities. *Schaefer-LaRose*, 679 F.3d at 572; *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1269 (11th Cir. 2008). Summary judgment is appropriate

---

[10] I cite the version of 29 C.F.R. § 541.100 that was effective at the time of plaintiffs' employment. A new version of this rule was set to take effect on December 1, 2016, but its implementation and enforcement has been enjoined. *See Nevada v. U.S. Dep't of Labor*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016).

only where an employer demonstrates that no reasonable jury could find the employee in question to be non-exempt. *See Anderson*, 477 U.S. at 248; *Barreto,* 331 F. App'x at 678; *Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1129-30 (9th Cir. 2002).

Defendants contend that plaintiffs June Kim and Djurickovic meet all four criteria. According to defendants, both employees were paid on a salary basis at rates above the salary threshold. June Kim, they argue, was primarily responsible for LSK 121's wax-metal department as evidenced by his disputed job description and signed statements of two wax-metal employees. Defendants argue that the requirement that June Kim customarily direct the work of at least two other employees is satisfied by his involvement in conducting performance reviews of other employees and his approval of vacation leave requests. Finally, defendants argue that June Kim's role in monitoring, distributing, and evaluating wax-metal department employees' work demonstrates that he had "an enormous amount of control and influence over the hiring, firing and promotions of his employees." Defs.' Memo. at 10. Defendants do not provide additional cites to the record to support this proposition.

In support of Djurickovic being exempt, defendants offer only a few scattered references to the record. They essentially contend that because Djurickovic was the most senior employee in the CAD department, took responsibility for the work product

22

that came out of the department, and once represented in an employment application that he had served as a manager at LSK 121, his primary duty was the management of the CAD department. To satisfy the supervision element of the executive exemption, defendants rely on Djurickovic's deposition testimony about training other employees in the CAD department, correcting their mistakes, and answering their questions. From these facts alone, defendants argue that there is no dispute of material fact that Djurickovic satisfies the requisite criteria.

Defendants have not carried their burden with respect to either employee. Although plaintiffs identify multiple shortcomings in defendants' evidence,[11] I need not examine all of them because defendants plainly fail to show that either employee played a role in making decisions to hire, fire, and promote other LSK 121 employees. Defendants do not provide any evidence in their Local Rule 56.1 statement showing that

---

[11] In their opposition brief, plaintiffs argue that June Kim and Djurickovic were not truly paid on a salary basis because they were docked pay for partial-day absences and for absences caused by the employer's needs. Djurickovic Dep. 76-77, 79, 87, Exh. 4; Pls.' Opp., Exh. 4; see 29 C.F.R. § 541.602(a),(b)(1) (2004) ("[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked....An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business."). Plaintiffs also contend that, because defendants have not provided evidence of the amount of time June Kim and Djurickovic spent on exempt managerial tasks, they cannot meet the primary duty requirement of 29 C.F.R. § 541.100(a)(2), as defined in 29 C.F.R. § 541.700.

Djurickovic and June Kim ever made hiring, firing or promotion decisions. With respect to Djurickovic, defendants seem to overlook the requirement entirely, and the only evidence in the record on the subject is Djurickovic's denial that he had any role in these sorts of decisions.[12]

As for June Kim, none of the documents or testimony in the record—including the performance review documents, the disputed job description, the wax-metal employee statements, and the vacation request forms he signed—indicate that he was ever asked to or ever did provide any hiring, firing, or promotion recommendations. Moreover, when June Kim was asked at his deposition whether he ever had the opportunity to recommend people for hire, he responded that he had not. June Kim Dep. at 32-34.

To establish that plaintiffs June Kim and Djurickovic were exempt from overtime pay under the executive exemption, it is defendants' burden to show that all four conditions set out at 29 C.F.R. § 541.100(a) are satisfied. Because they fail to put forth evidence demonstrating that June Kim and Djurickovic played a role in hiring and firing decisions, defendants have not met this burden. Accordingly, they are not entitled to

---

[12] When asked whether defendants gave him authority to hire new people for the CAD department, Djurickovic responded: "I wish I had that authority. I wouldn't have hired – or made the choices that [Kahng]'s made. Actually I had – I had no choice in it at all." Djurickovic Dep. at 59.

summary judgment with respect to the executive exemption's applicability. *See Hundt*, 294 F.R.D. at 110; *Bucaro v. Forest Pres. Dist. of Cook Cty., Ill.*, No. 06-cv-6006, 2009 WL 765373, at *7 (N.D. Ill. Mar. 23, 2009).

### III.

For the foregoing reasons, defendants' motion for partial summary judgment is denied.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
Dated: October 2, 2017        United States District Judge